CLARK v. CAPITOL TOOL & ENGINEERING CO.

CORPORATIONS—SALARIES OF OFFICERS—INFORMAL AGREEMENT TO INCREASE SALARIES.
Where president and secretary discovered, on auditing books, that corporation had made money during past year, requiring payment of income tax, informal agreement between them to increase their salaries, absorb said profit, and thus evade payment of tax, *held*, insufficient to support action by president for increased amount, even though it be a one-man corporation, with secretary in control.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted April 12, 1932. (Docket No. 76, Calendar No. 36,357.) Decided June 6, 1932.

Assumpsit on the common counts by Harry B. Clark against Capitol Tool & Engineering Company, a Michigan corporation, for services rendered. Judgment for defendant. Plaintiff appeals. Affirmed.

On informality of meeting of directors as affecting action fixing salaries, see annotation in 64 A. L. R. 717.

*Smith, Hunter & Spaulding (Clark S. Gregory and Charles W. Austin,* of counsel), for plaintiff.

*Warner & Converse,* for defendant.

SHARPE, J. On April 2, 1929, an agreement was entered into between Clarence A. Hathaway, doing business as the Capitol Machine & Supply Company, party of the first part, and Harry B. Clark, the plaintiff herein, and Charles H. Walters, parties of the second part, which, after reciting that first party was the owner of the machinery and equipment operated by him under the assumed name of the Capitol Machine & Supply Company, and that it had a valuation of $17,000, and that he was desirous of disposing of it, and that second parties were ''experienced die and tool men'' and were desirous of purchasing it, provided that a corporation should be organized under the name of the Capitol Tool & Engineering Company, with a capital stock of $25,000, divided into 2,500 shares of the par value of $10 each, and that first party should transfer the property above mentioned to the corporation and receive therefor 1,700 shares of said stock; that second parties should purchase said 1,700 shares of stock from first party at the par value thereof, with interest at six per cent. until paid, such payments to be made from the dividends as declared by the corporation, but all to be paid on or before three years from the date of the contract; that but 49 per cent. of said shares of stock should be delivered to second parties until the entire purchase price was paid, and that first party should have the right to vote the 51 per cent. thereof until that time. It was further provided that first party's son, C. Elwyn Hathaway, and his daughter, Alice E. Baynes, should act as directors with the first and second

parties; that the corporation should lease first party's building at an agreed upon rental, and that first party and each of second parties should receive $65 per week for services to be rendered to the corporation.

The articles of association were prepared pursuant thereto, and filed with the secretary of State on April 27, 1929. It was stated therein that first party was the owner of 1,696 shares of the stock and second parties and the son and daughter of one share each.

The record book of the corporation shows that a meeting of stockholders was held on April 2d, at which all the stockholders were present, and at which they were all elected directors, and at which by-laws were adopted and a recommendation made that the board of directors accept a bill of sale of first party's property in exchange for 1,700 shares of the capital stock of the company. This is followed by a meeting of the board of directors at which Walters was elected president, Clark vice-president, and Hathaway treasurer and secretary. The bill of sale was accepted as per the recommendation of the stockholders, a lease of the property authorized, and the compensation of the parties fixed as in the agreement.

The record discloses that at a special meeting of the board of directors, held on September 7, 1929, the resignation of Charles Walters as president and director was read and accepted, and the plaintiff elected president in his stead. The following then appears:

"Motion was made and seconded that Harry B. Clark and Clarence A. Hathaway's salary be on the basis of $8,000 per year, and be retroactive to April 1st. Motion carried."

The minutes of this meeting were signed by "Alice E. Baynes, secretary."

Plaintiff testified that he continued to work for the company until April, 1931, when he quit at Hathaway's request; that no certificate of stock was issued to him; that—

"I think the first year the concern made a profit of somewhere around $13,000 or $14,000 net. They did not do so well the second year."

Plaintiff brought this action to recover the balance of salary claimed to be due him, $8,271.47. The answer of the defendant was a denial of plaintiff's claim, and by recoupment it claimed that he was indebted to the company in the sum of $3,056.86. The trial court instructed the jury that, under the proofs submitted, the plaintiff was not entitled to recover. He submitted defendant's claim of recoupment to them, and on October 14, 1931, they found a verdict of no cause of action, on which a judgment was subsequently entered. The plaintiff has appealed therefrom.

Plaintiff's claim is based upon services rendered the defendant from April 1, 1929, to April 1, 1931, at $8,000 per year, less payment admitted in the sum of $7,728.53, leaving a balance due of $8,271.47. If entitled to but $65 per week, as provided for in the agreement and at the first meeting of stockholders, it is conceded that he has been overpaid. He does not base his right to recover upon the minutes in the record, above quoted, but upon an agreement made between himself and Clarence A. Hathaway. There is uncertainty as to who prepared the minutes of the meeting of September 7, 1929. Mrs. Baynes testified that some person, she thought it was the plaintiff, handed the manuscript

to her and directed her to enter it on the record, and she did so. The plaintiff testified that the first information he had concerning it was about the time he left, April 1, 1931. Plaintiff testified:

"There came a time toward the close of the first year when we employed somebody to get a statement of the books of the corporation. We employed Ray Lynn, an auditor here in Lansing. There was a talk between me and Mr. Hathaway, senior, in the presence of Ray Lynn about the $8,000 wages and we both agreed to it."

Under cross-examination he said:

"Q. In April, 1930, you had the books audited as provided by the agreement the books should be audited every year?

"A. That is right. I remember that in April, 1930, the company had made considerable money. That money wasn't on hand. It was largely reinvested. It wasn't cash. It was reinvested and cash receivable. I can't answer how much the cash receivable amounted to.

"Q. When did you and Hathaway have this talk about dividing up the money and paying $8,000 salaries?

"A. Had it in Mr. Ray Lynn's office. Mr. Ray Lynn and myself and Mr. Hathaway were present and no one else.

"Q. You found then the company had made a profit of somewhere around $14,000 or $15,000?

"A. I believe so.

"Q. And you and Mr. Hathaway agreed that the profit would be divided up?

"A. Yes, sir. That profit was to be left in the business to do business on. Mr. Hathaway was not to get cash."

Clarence A. Hathaway testified:

"*Q.* Well, the company had made some money that year?

"*A.* Yes, while Mr. Walters was there and up until April, up until the time we made out this report, made a fairly good showing. I don't know what the profits were exactly, but Mr. Clark stated around $14,000 or $16,000. At the office of Mr. Lynn the profit on the book, the book value, the book profit showed enhanced value and the question of the income tax was brought up. It was suggested, I think by Mr. Clark, that the profits be divided between us, that we pay the income tax on those profits individually instead of paying as a corporation, because the corporation tax is more than the individual tax, the rate, in that way it would save to the company and for his benefit the difference."

Ray Lynn, the accountant who prepared the income tax report for the corporation, testified:

"*Q.* Was there ever anything said in that conversation about why they agreed on this salary to themselves?

"*A.* Well, during their conversation it was considered. The fundamental reason for it was because they both worked hard, put in a lot of time, getting business through and earning the profits and they did not feel they should file an income tax return on only $65 a week on that basis and pay the government around $1,200 or $1,500. That was the reason they figured they were entitled to further consideration in the way of salaries. While the conversation was going on I was there and Mr. Hathaway and Mr. Clark. My secretary was in and out. No other directors were there. Mrs. Baynes was not there, Mr. Elwyn Hathaway was not there. I prepared the income tax statement for the corporation and as set up in there this salary that had been agreed upon in the conversation."

It also appears that on the books kept after April 1, 1930, both plaintiff and Hathaway were credited with $65 per week for services. Both these men had worked for the defendant company after its organization for the compensation agreed upon, $65 per week. No thought entered their minds that they were entitled to more until it became apparent that, if the income tax report of the company showed the large profit they had made, the tax thereon would be much greater than if this profit was treated as salary and reported by each of them as such. The money represented by this increase in salary was not withdrawn from the funds of the company, and it clearly appears that, while a profit had been made, it had been invested in additional equipment and was represented in the increased value of the plant. Even though it be conceded that it was a one-man corporation, and that Hathaway had control, we think no court should enforce payment by the corporation of an increase in salary from $3,225 to $8,000 for the year, when the services had been rendered before it was made, under the circumstances here presented. The purpose evidently was to make the books of the corporation show a smaller profit for the year and thus reduce the income tax to be paid.

In our opinion the court was clearly right in holding that plaintiff had not proven that he was entitled to recover for services at the rate of $8,000 per year, and in so directing the jury.

The judgment is affirmed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.